UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

UNITED STATES OF AMERICA,

        Plaintiff,

v.

NORMA YANARI AYALA,

        Defendant.
_____/

Case No. 1:25-cr-136

Hon. Paul L. Maloney
United States District Judge

**DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT
OF MOTION FOR DOWNWARD VARIANCE**

Ms. Norma Ayala will have served nearly six months in custody by the time she will be sentenced. Given her circumstances, this time is sufficient, but no greater than necessary to punish her for her offense. She respectfully asks for a sentence of time served.

**Relevant Procedural History**

An Indictment charged Ms. Ayala with five counts related to transferring false identification documents and one count of illegal reentry. *See* ECF No. 2, PageID.12-22 (Indictment). Pursuant to a plea agreement, Ms. Ayala timely pleaded guilty to Count I of the Indictment, which specifically charged her with conspiracy to transfer false identification documents. *See* ECF No. 70, PageID.348-355 (Plea Agreement). The government has agreed to dismiss the

remaining counts at sentencing. *See id.* at 3. Ms. Ayala is scheduled for sentencing before this Court on March 16, 2026.

## Objection to Presentence Investigation Report

Ms. Ayala objects to paragraph 48 of the Presentence Investigation Report (PSR) for not giving a mitigating role reduction under U.S.S.G. § 3B1.2. *See* ECF No. 103, PageID.530, ¶ 48 (PSR). Section 3B1.2 directs courts to decrease a defendant's offense level based on their relative role in the offense. *See* U.S.S.G. § 3B1.2. A defendant who was a "minimal participant" receives a four-level decrease, while a defendant who was a "minor participant" receives a two-level decrease. *See id.* A defendant in between receives a three-level decrease. *Id.*

The key dispute between the parties appears to be with whom this Court must compare Ms. Ayala's conduct. The PSR and the government appear to believe this Court must compare Ms. Ayala's role to both of her co-defendants, Mr. Rigoberto Vasquez-Vasquez *and* Mr. Edgidio Vasquez-Mencho. Under this logic, Ms. Ayala does not qualify because she participated in more controlled purchases than Mr. Vasquez-Mencho and thus was not substantially less culpable than the average participant in the *entire* conspiracy.

But the PSR's and government's premise is wrong. For purposes of the role reduction under § 3B1.2, when a defendant's guideline calculation is based only on the relevant conduct attributable to that defendant, the § 3B1.2 role comparison focuses on the participants involved *in that relevant conduct* rather than a larger conspiracy. *See United States v. Roberts*, 223 F.3d 377, 380 (6th Cir.

2

2000). The Sixth Circuit's decision in *Roberts* illustrates this principle. There, the defendant pleaded guilty to conspiracy to distribute and possession with the intent to distribute cocaine. *See id.* at 378. The conspiracy involved the defendant and three other individuals. *Id.* In calculating the defendant's base offense level, the PSR held the defendant responsible "only for the specific drug transactions in which he was involved." *Id.* at 379. The defendant requested a role reduction, and the district court, evaluating the defendant's relative role in the drug transactions in which he was personally involved, determined he was not substantially less culpable than the individuals in such transactions. *See id.* So the district court denied the defendant's request. *Id.*

On appeal, the defendant argued the district court erred because he was "far less culpable than two of the three other participants . . . in the conspiracy to which he pled[.]" *Id.* at 380. The "thrust of [defendant]'s argument [was] that his minimal role in the overall conspiracy warrant[ed] a § 3B1.2 adjustment, even though the larger conspiracy was not taken into account in establishing [defendant]'s base offense level." *Id.* But the Sixth Circuit expressly rejected this argument. *Id.* The Court explained: "a district court should assess a defendant's role in the offense in relation to the relevant conduct that was attributed to the defendant for purposes of calculating his base offense level; 'otherwise, a defendant could argue that [his] relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining [his] role in the offense.'" *Id.* at 381 (quoting *United States v. Rodriguez De Varon*, 175 F.3d 930,

3

941 (11th Cir. 1999)). Because the defendant in *Roberts* could not show he was a minor participant compared "to other participants in [*his*] relevant conduct," the Sixth Circuit affirmed the denial of a role reduction. *See id.* at 381 (emphasis added).

The Sixth Circuit routinely follows the lesson in *Roberts*. *See Tajwar v. United States*, 2025 WL 593679, *7 (6th Cir. Feb. 24, 2025) ("[Defendant focuses on his role in the broader conspiracy, arguing that he played a small part in the organization's overall activities. But [defendant]'s entitlement to a role reduction *does not turn on his part in the overall conspiracy; it depends on his role in the conduct that was included in his base offense level.*" (emphasis added)); *United States v. Williams*, 635 Fed. Appx. 280, 285 (6th Cir. Dec. 30, 2025) ("Courts do not tally up the number of charges against a particular defendant in relation to his co-defendants and award mitigating role reductions accordingly; rather, the 'salient issue is the role the defendant played in relation to the activity for which the court held him or her accountable.'" (quoting *United States v. Roper*, 135 F.3d 430, 434 (6th Cir.1998)); *United States v. Gomez*, 49 Fed. Appx. 592, 594 (Oct. 30, 2002) (affirming denial of role reduction because defendant "was not held accountable for other conduct and he did not show that he played a relatively minor role with regard to [the shipment he was held responsible for]"); *United States v. Lucas*, 7 Fed. Appx. 412, 415-16 (6th Cir. Mar. 22, 2001) (same). Other circuits do the same. *See, e.g.*, *United States v. Arias-Mercedes*, 901 F.3d 1, 6 (1st Cir. 2018) (explaining that the role reduction analysis is limited to those involved

4

in the defendant's relevant conduct rather than the overall conspiracy, and collecting cases saying the same).

Here, the PSR calculated Ms. Ayala's offense level based solely off the transactions for which she was personally responsible. *See* ECF No. 103, PageID.527, ¶ 46 (PSR). On that front, Ms. Ayala only dealt with Mr. Vasquez-Vasquez in committing her offense—not Mr. Vasquez-Mencho. *See id.* ¶¶ 23-25, 46 (PSR). Thus, the lesson in *Roberts* makes clear that in determining whether she is entitled to a role reduction under U.S.S.G. § 3B1.2, this Court must compare Ms. Ayala only to Rigoberto Vasquez-Vasquez (the person involved in the relevant conduct attributed to Ms. Ayala)—and *not* to Edgidio Vasquez-Mencho (a member of the broader conspiracy).[1]

So the issue is whether Ms. Ayala was "substantially less culpable than [Mr. Vasquez-Vasquez] in the criminal activity." U.S.S.G. § 3B1.2, cmt. n.3(A). She was.

---

[1] It makes no difference that the comparison here involves only two individuals. "Section 3B1.2 is about comparisons." *United States v. Wilson*, 802 Fed. Appx. 976, 980 (6th Cir. 2020). When evaluating the relative culpability of two actors, the court necessarily makes a comparison. The guideline's commentary confirms this understanding. The introductory commentary explains that "[w]hen an offense is committed by more than one participant . . . § 3B1.2 . . . may apply." Reinforcing this conclusion, application note two explains that the reduction is "not applicable unless more than one participant was involved in the offense." U.S.S.G. § 3B1.2, cmt. n.(2). By expressly precluding the reduction when the offense involves only one individual—but not precluding it when it involves two individuals—the guidelines deliberately left open the possibility of the reduction applying in a case involving two individuals.

In making this determination, the Court will look to five non-dispositive factors set forth under § 3B1.2 Commentary, Application Note 3(C). *See United States v. Guerrero*, 76 F.4th 519, 533 (6th Cir. 2023). These factors are:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(A).

These factors, applied to Ms. Ayala and Mr. Vasquez-Vasquez, favor a role reduction. Mr. Vasquez-Vasquez established the business of false documents, he advertised and promoted his services; he manufactured the false documents; and he determined the timeline for when the documents were ready to be transported (indeed, at least one controlled buy had to be delayed due to Mr. Vasquez-Vasquez not having produced the documents in time). *See* Attachment A, Special Agent Schifini Search Warrant Application, Page 7 (information about Mr. Vasquez-Vasquez's marketing); Attachment B, Special Agent Schifini October 28, 2025, Report (discussing results of forensic analysis of Mr. Vasquez-Vasquez's phone

and concluding, based on "more than two (2) dozen facial photographs" found on his phone, that "it appeared that [Mr. Vasquez-Vasquez] was manufacturing fraudulent state identification documents, in addition to Social Security cards and lawful permanent resident cards"); Attachment C, Special Agent Schifini December 2, 2024, Report, at 2 (detailing controlled buy and explaining Ms. Ayala "stated that the person who makes the documents did not have them ready for transfer and they were not completed"). As Special Agent Schifini testified at Ms. Ayala's detention hearing, Ms. Ayala was "just a runner or salesperson," received a "slight markup," and was a "go between" for customers and Mr. Vasquez-Vasquez. *See* ECF No. 34, Arraignment, Initial Pretrial & Detention Hearing Transcript, PageID.118-19. Special Agent Schifini also stated Ms. Ayala's role was to "generate[] business for some of the main people in the group." *Id*. at 118 (emphasis added). Furthermore, Ms. Ayala indicated that she gave Mr. Vasquez-Vasquez the money that she received from customers, ECF No. 103, PageID.529, ¶ 36, showing she gained minimally, if anything while he gained the vast majority of the profit. There is no evidence showing Ms. Ayala was aware of Mr. Vasquez-Vazquez's methods for producing the false documents, the sources of where he received them, why he charged the amount he did for his services, how he set up his business, or any other logistical item required to continue selling false documents. Indeed, Mr. Vasquez-Vasquez's plea agreement confirms he was the "facilitator" between Ms. Ayala and other conspirators. See ECF No. 85, Vasquez-Vasquez Plea Agreement, PageID.394.

Thus, applying the factors under U.S.S.G. § 3B1.2 cmt. n.3(A), Ms. Ayala was substantially less culpable than Mr. Vasquez-Vasquez. She is arguably a minimal participant, but at the very least a minor participant. A role reduction under § 3B1.2 is thus warranted.

The cases cited by the PSR don't change the analysis. The Seventh Circuit's decision in *Munoz* involved a situation where the defendant was the one responsible for actually manufacturing false documents, resolving payment disputes, and directing the group's operations. *United States v. Munoz*, 610 F.3d 989, 992 (7th Cir. 2010). For example, the defendant "inquir[ed] about the status of a [street vendor] who had been arrested by the police, directing a different [street vendor] to get current on money he owed the Organization, and explaining which [street vendors] would work which shifts on a given day." *Id*. The defendant also had $200,000 of the conspiracy's cash in his closet. *Id*. at 993. None of these aggravating facts apply to Ms. Ayala. Ms. Ayala did not manufacture the documents, did not resolve payment disputes, did not direct anyone in any of the operations, and did not possess a large stash of cash.

The Fourth Circuit's decision in *United States v. Powell*, 680 F.3d 350, 359 (4th Cir. 2012), relied on reasoning that the Sentencing Commission has since squarely rejected. In *Powell*, the Fourth Circuit affirmed a denial of a role reduction based on the fact that the defendant's conduct was "essential and material." *Id*. But as the Sentencing Guidelines make clear: "The fact that a defendant performs an essential or indispensable role in the criminal activity *is*

8

*not determinative.* Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, cmt. n.3(C); *see also United States v. Cota-Luna*, 891 F.3d 639, 650 n.6 (6th Cir. 2018) (explaining that the district court erred in relying on the finding that defendants were "indispensable to the success of the criminal enterprise" and explaining the reduction "would still have been warranted"). Thus, *Powell*'s result is outdated and inconsistent with today's Guidelines.

## Section 3553(a) factors

Regardless of how this Court resolves the role adjustment issue, this Court must consider the sentencing factors outlined in 18 U.S.C. § 3553(a). In doing so, this Court must mind its "overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary'" to achieve the sentencing goals set forth under § 3553(a)(2). *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting 18 U.S.C. § 3553(a)). A sentence of time served will achieve these goals.

To Ms. Ayala, her three-year old son means everything. ECF No. 103, PageID.533, ¶ 72 (PSR). Every time counsel has visited Ms. Ayala, Ms. Ayala talks about how much she misses him. Nearly every time, Ms. Ayala weeps about being separated from him. She misses playing games with him. She misses taking him on walks. She misses feeding him. She would do anything to be able to hold him in her arms—to wrap herself around him and show him her unconditional love. While Ms. Ayala is able to call her boyfriend, a U.S. Citizen, who is currently

taking care of her son and in turn can help facilitate communication with her son, it's simply not the same. Her son constantly asks where she is—and it pains her to say she can't be with him right now. By the time this Court sentences her, Ms. Ayala will have been separated from him for nearly six months. She never had a chance to tell him goodbye, as she was arrested during a traffic stop. *See id.* ¶ 29.

Ms. Ayala's reaction is how most mothers would feel. But it hits Ms. Ayala even more so than a typical mother. That's because Ms. Ayala watched as her first son—who was a mere two months old at the time—actively died in front of her as she raced to take him to the hospital. *See id.* ¶ 73. As she rushed to get him help, she couldn't do anything except hear her son's cries grow fainter and fainter as he struggled for breath. Unsurprisingly, having to witness her own son's death was very traumatic—and makes her separation from her second son that much more painful.

This separation is by far the biggest deterrent to her ever attempting to re-enter the United States or commit any further wrongdoing. She understands that if she attempts to re-enter or commits further crimes, she will be detained again and separated from her son for even more time than she already has. She has learned an extremely difficult lesson—and thus further incarceration is unnecessary to achieve the relevant § 3553(a) goals.

Before this case, Ms. Ayala worked very hard to provide for herself and her son—she at times worked multiple jobs, and has at all times while in this country

10

maintained steady employment. *See id.* ¶ 81. She has a supportive boyfriend who plans to regularly visit her once she is in Guatemala.

Unlike many non-citizen defendants, Ms. Ayala has specific plans for her return to her home country. She now has a physical home in Guatemala—indeed, her initial motivation to come to the United States was to earn money so that she could purchase a home in Guatemala, which she has done. *See id.* ¶¶ 71, 74. She also wants to work in the medical field—and her post-high school schooling shows she has the brains to do that. *See id.* ¶¶ 74, 80.

Related to the medical field, Ms. Ayala also would note that she was supposed to have a surgery to remove a large mass in her breast as a preventative measure. *See* ECF No. 60, PageID.334-336 (Emergency Furlough Request); ECF No. 64, PageID.340-341 (Order Conditionally Granting Furlough). Ms. Ayala tried to make her previously scheduled surgery by requesting an emergency furlough and is grateful to this Court for doing everything it could to allow her to obtain it. Unfortunately, Ms. Ayala was unable to go to the surgery because Immigration Customs and Enforcement refused to lift the detainer it had on her, and the United States Marshals indicated that it was refusing to get her this treatment because the treatment was considered elective. Meanwhile, Ms. Ayala still needs her surgery, and the likelihood of her receiving this care in the Bureau of Prisons (BOP), should she be sentenced to additional time in custody, is minimal. Thus, her medical needs are relevant in considering what an appropriate sentence would be.

11

A sentence of time-served accords with the spirit of the guidelines. Even assuming this Court declines a role reduction, Ms. Ayala is in Zone B, a Zero-Point offender, and thus "a sentence other than a sentence of imprisonment . . . is generally appropriate." U.S.S.G. § 5C1.1, cmt. n.(9). As Ms. Ayala will have already served roughly six months in custody by the time of sentencing, additional time in custody is generally not warranted.

National sentencing data supports a time-served sentence too. Again, even assuming this Court does not apply a role reduction, there have been eight defendants in the past five years with Ms. Ayala's primary guideline (U.S.S.G. § 2L2.1), total offense level (10), and criminal history category (I). *See* United States Sentencing Commission, Judiciary Sentencing Information (last accessed Feb. 20, 2026). Half of them did not receive any kind of custodial sentence. *Id.* And of the other half that did, the average length of imprisonment was four months, while the median length was three months. *See id.* Thus, a sentence of time-served fits neatly within this average and median length. *See United States v. Hymes*, 19 F.4th 928, 935-36 (6th Cir. 2021) (explaining that while district court judges aren't *required* to consider national data, they "should" look at the data as a "starting point" (citations omitted)).

Finally, Ms. Ayala's offense did not involve any kind of drugs, firearms, or violence. She came to this country to find opportunities. Her offense helped others evade employment and immigration laws, but it also helped others find work opportunities too. While she regrets her actions and knows them to be wrong, it is

12

mitigating that she did not create or pose any obvious safety risks to the community.

                                                      Respectfully submitted,

                                                     SEAN R. TILTON
                                                     Federal Public Defender

Dated: March 2, 2026                      /s/ Marcus Miller
                                                     MARCUS MILLER
                                                     Assistant Federal Public Defender
                                                     50 Louis, NW, Suite 300
                                                     Grand Rapids, Michigan 49503
                                                     (616) 742-7420